**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 23-21461-Civ-GAYLES/TORRES

CONNECTICUT GENERAL LIFE
INSURANCE COMPANY,

      *Plaintiff,*

v.

JUDITH MAE MAYBERG, MIRIAM
FRIEDFERTIG, AVIVA A. FISTEL,
MENACHEM MENDEL MAYBERG,
SHALOM DOUBER MAYBERG,
SCHNEUR ZALMAN MAYBERG,
JOSEPH ISAC MAYBERG, and DOES 1 –
10,

      *Defendants.*

_____/

**REPORT AND RECOMMENDATION ON**
**DEFENDANTS' MOTION TO DISMISS**

This matter is before the Court upon Defendants' Motion to Dismiss Plaintiff's claims against Aviva A. Fistel ("Aviva"), Joseph Isac Mayberg ("Joseph"), Menachem Mendel Mayberg ("Menachem"), Miriam Friedfertig ("Miriam"), Schneur Zalman Mayberg ("Schneur"), and Shalom Douber Mayberg ("Shalom") (collectively, the "Mayberg children") in Plaintiff's Amended Complaint. [D.E. 27]. Plaintiff's initial Complaint was previously dismissed without prejudice by the Court on the grounds that it amounted to a shotgun pleading. [D.E. 25]. Following the filing of an amended complaint, District Judge Darrin P. Gayles has now referred Defendants' Motion to

Dismiss Plaintiff's Amended Complaint to this Court for a Report and Recommendation. [D.E. 30]. Having reviewed Plaintiff's Amended Complaint [D.E. 26], Defendants' Motion to Dismiss [D.E. 27], Plaintiff's Response [D.E. 28], and Defendants' Reply [D.E. 29], we **RECOMMEND** that the Motion be **GRANTED IN PART** for the reasons detailed below.

## I.    *BACKGROUND*

Following a personal injury settlement stemming from a fire in Las Vegas, Nevada in 1981, Connecticut General Life Insurance Company ("Plaintiff") was obligated to issue recurring monthly annuity payments to Morton Mayberg ("Morton") in the amount of $4,500 which, after 1995, continued only as long as Morton was alive on the date each payment was due. [D.E. 26 at ¶ 13]. The annuity payments were deposited into a bank account jointly held by Morton and Judith. [*Id.* at ¶ 16]. Plaintiff contends that Morton died on or around October 26, 2016, as evidenced by his contemporaneous memorialization in a local newspaper obituary. [*Id.* at ¶ 20].

Plaintiff alleges that neither Judith nor any of her six children informed it of Morton's death, and his death was not detected by Plaintiff's internal life-verification processes or the third-party life-verification vendors that Plaintiff employed. [*Id.* at ¶¶ 19, 21]. Based on Judith an her children's wrongful conduct, Plaintiff contends that it continued to issue the monthly annuity payments into a bank account jointly owned by Morton and Judith until December 2022. At that point, when it did not

receive a response to three consecutive life-verification forms sent to Morton's last known residence, the payments were discontinued. [*Id.* at ¶ 21].

During the time between Morton's death in October 2016, and Plaintiff's termination of the annuity payments in December 2022, Plaintiff alleges that $333,000 in excess life-contingent annuity payments (the "Overpayment") were deposited into the bank account held by Morton and Judith. [*Id.* at ¶ 22]. After learning of Morton's death, and after discontinuing the payments, Plaintiff sent several letters to Judith at her last known residence informing her of the Overpayment and requesting that the funds be returned. Plaintiff alleges that Judith never responded or contacted it to arrange or the return of the Overpayment. [*Id.* at ¶ 24]. Plaintiff also sent letters to each of the Mayberg children in March 2023, informing them of the Overpayment and requesting that the funds be returned. Plaintiff similarly alleges that none of the Mayberg children contacted Plaintiff or returned any portion of the Overpayment. [*Id.* at ¶ 25].

Plaintiff accordingly filed this action on April 17, 2023 [D.E. 1], bringing claims for (1) Unjust Enrichment, (2) Conversion, and (3) Money Had and Received against *each* of various members of the Mayberg family including Judith and her six children. The Mayberg children informed counsel for Plaintiff that Judith is currently located in Israel, but they have not provided an Israeli address where Judith can be reached. As a result of their inability to locate Judith, Plaintiff has been unable to serve her as a party to this action. [D.E. 26 at ¶ 35].

For their part, through counsel, the Mayberg children filed a Motion to Dismiss all the claims against them. [D.E. 16]. The Court granted Defendants' motion and dismissed Plaintiff's complaint without prejudice as a shotgun pleading:[1]

> Plaintiff lists multiple Defendants in this action but fails to allege how any Defendant, other than Judith Mayberg, improperly received funds from the annuity or even knew about the funds. Moreover, Plaintiff improperly refers to the Defendants in general without distinguishing the Defendants' actions or how each defendant is responsible for any wrongdoing. As a result, this action must be dismissed without prejudice for failure to state a claim.

[D.E. 25].

Plaintiff subsequently filed the pending Amended Complaint. [D.E. 26]. The amended complaint included identical claims for (1) Unjust Enrichment, (2) Conversion, and (3) Money Had and Received against Judith and each of her children. But Plaintiff's Amended Complaint also added claims for (4) Fraudulent Inducement against Judith, as well as (5) Aiding and Abetting Fraud against each of the Mayberg children. In addition to the two new claims, Plaintiff's Amended Complaint injected several new factual allegations relating to property transfers involving several of the Mayberg children, which Plaintiff claims "show[], unequivocally, that the Mayberg family has co-mingled funds with one another and with the various legal entities that they control." Specifically, the Amended Complaint alleges:

---

[1] *Cf. Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015) (holding that shotgun complaints "assert[ ] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought are against.").

(1) In 2014, a multi-million-dollar property owned by Judith and Morton on North Bay Road was transferred to a Florida Limited Liability Company (LLC). [*Id.* at ¶ 26]. In 2016, the property was transferred to a second Florida LLC which lists Seltzer Mayberg, LLC as its registered agent. [*Id.* at ¶ 27]. Menachem, one of the Mayberg children, is a law partner at, and the registered agent for, Seltzer Mayberg, LLC. [*Id.* at ¶ 28]. This property is now listed for sale for over $5 million. [*Id.* at ¶ 26].

(2) Morton and Judith owned a second multi-million-dollar property on Michigan Avenue in an irrevocable trust. Menachem and Schneur, two of the Mayberg children, served as co-trustees of the irrevocable trust. In 2017, through the co-trustees, the property was transferred to Sarita Mayberg ("Sarita"), who is Menachem's wife. [*Id.* at ¶ 29].

(3) In 2014, Morton moved to a third property on Pine Tree Drive. That property was later purchased by Miriam, another one of the Mayberg children, in 2020. [*Id.* at ¶ 30].

Counsel for the Mayberg children filed a Motion to Dismiss Plaintiff's claims against each of the children with prejudice. [D.E. 27]. Defendants contends that (1) Plaintiff lacks any specific allegations relating to four of the six children [Aviva, Joseph, Miriam, and Shalom], and (2) for the two children mentioned [Menachem and Schneur], the allegations are "conclusory, chronologically nonsensical, and irrelevant to their claims." [*Id.* at ¶ 4].

## II.    *MOTION TO DISMISS STANDARD*

Federal Rule of Civil Procedure 8(a)(2) requires that a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Further, Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." To properly state a claim, the pleading must give the other party "fair notice of what the . . . claim is and the grounds upon which it rests." *Ashcroft v. Iqbal*, 556 U.S. 662, 698-99 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678) (quoting *Twombly*, 550 U.S. at 570). "When considering a motion to dismiss, all facts set forth in [Plaintiff's] complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. NationsBank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir. 1993)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions . . . ." *Twombly*, 550 U.S. at 555 (internal citations and quotations omitted). The Eleventh Circuit has endorsed "a 'two-pronged approach' in applying these principles: 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether

they plausibly give rise to an entitlement to relief.'" *Am. Dental Ass'n v. Cigna Corp*, 604 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679).

## III.   ANALYSIS

### A.   <u>Count I - Unjust Enrichment – Should be Dismissed as it Fails to State a Claim Against All of the Mayberg Children</u>

In Florida, a claim for unjust enrichment has the following elements: "(1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendants to retain it without paying the value thereof." *Virgilio v. Ryland Group, Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012) (citing *Fla. Power Corp. v. City of Winter Park*, 887 So. 2d 1237, 1241 n. 4 (Fla. 2004)). "A claim for unjust enrichment is an equitable claim, based on a legal fiction created by courts to imply a 'contract' as a matter of law." *Tooltrend, Inc. v. CMT Utensili, SRL*, 198 F.3d 802, 805 (11th Cir. 1999).

"Because the basis for recovery does not turn on the finding of an enforceable agreement, there may be recovery under a contract implied in law even where the parties had no dealings at all with each other." *Com. P'ship 8098 Ltd. P'ship v. Equity Contracting Co., Inc.*, 695 So. 2d 383, 386 (Fla. 4th DCA 1997) (citing *Variety Children's Hosp., Inc. v. Vigliotti*, 385 So. 2d 1052, 1053 (Fla. 3rd DCA 1980) (implying a contract against a mother to pay for her child's medical treatment where only the father had agreed to reimburse the hospital for the treatment)). However, "to prevail on an unjust enrichment claim, the plaintiff must directly confer a benefit

to the defendant." *Kopel v. Kopel*, 229 So. 3d 812, 818 (Fla. 2017). This generally requires that a defendant receive a tangible and direct benefit, even if the benefit first passes through an intermediary. *Compare GVB MD v. Aetna Health Inc.*, No. 19-22357-CIV-MORENO, 2019 WL 6130825, at *6 (S.D. Fla. Nov. 19, 2019) (granting an insurance provider's motion to dismiss a medical service provider's unjust enrichment claim, holding that providing medical services to insured patients was not a direct benefit on the insurer), *with Carriuolo v. General Motors LLC*, 72 F. Supp. 3d 1323 (S.D. Fla. 2014) (denying a car manufacturer's motion to dismiss a consumer's unjust enrichment claim, holding that a direct monetary benefit could have been conferred to the manufacturer even where the consumer purchased the vehicle from an independent dealership).

Here, Plaintiff asserts a claim for unjust enrichment in Count I against each of the six Mayberg children. The core of Plaintiff's claim alleges:

(1) Plaintiff conferred a benefit upon the Mayberg children "[a]s a result of the improper retention of the Overpayment." [D.E. 26 at ¶ 41].

(2) The Mayberg children are "aware that they are not entitled to such funds" because of the life-contingent nature of the annuity payments as well as Plaintiff's written requests to each of the children to return the wrongful Overpayments. [*Id.* at ¶ 42].

(3) "Defendants have voluntarily accepted and retained the benefit of the funds comprising the Overpayment. The Defendants have failed

to return the Overpayment to [Plaintiff] despite [Plaintiff's] demand that the Defendants do so." [*Id.* at ¶ 43].

(4) "Defendants have received and retained such benefits under circumstances that make it inequitable and unjust for them to retain such benefit without payment of value." [*Id.* at ¶ 44].

Taking these allegations as true and in the light most favorable to Plaintiff, we do not find that Plaintiff has adequately stated a claim for which relief can be granted against any of the Mayberg children under an unjust enrichment theory. Plaintiff here was lawfully obligated to deliver the life-contingent monthly annuity payments to Morton arising out of a personal injury settlement agreement. While Plaintiff contends that these payments improperly continued after Morton's death, Plaintiff alleges no relationship with any of the Mayberg children prior to the termination of the payments, and Plaintiff further does not allege a direct conferral of any goods or services that would ordinarily warrant a contractual obligation. *See Vigliotti*, 385 So. 2d at 1053 ("[T]he preliminary question in determining whether the law should imply a contract . . . turns on whether [the defendant] has been unjustly enriched, and that determination rests upon whether [the defendant] has an obligation or legal duty that has been satisfied by the efforts of another.").

All the cases that Plaintiff cites urging this court to imply a contract at law involve equitable circumstances where some form of exchange of goods and services was at the heart of the claim. *See Carriuolo*, 72 F. Supp. 3d at 1326-27 (consumers of automobiles suing a car manufacturer for falsely advertising the car's safety

9

ratings and retaining a portion of the revenue from the sale); *Virgilio*, 680 F.3d at 1337 (home purchasers suing housing vendors, developers, and marketers for failing to disclose the housing development's proximity to a former bombing range and retaining the full revenue of the sales); *Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1101-02 (11th Cir. 2021) (alcohol consumers suing the alcohol producer and retailer for selling an illegal product and retaining the revenue from the sales despite the product's diminished value).

In cases like these, the expectations of each of the parties dictated that a contract should be implied in the absence of an express contract. *See also State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc.*, 427 F. App'x 714, 717 (11th Cir. 2011) (affirming award of damages for unjust enrichment claim; State Farm alleged that the Defendants unlawfully obtained personal injury protection benefits the insurer by "push[ing] State Farm's insureds through a sham course of treatment and evaluation designed specifically to exhaust the patients' insurance benefits. . . . State Farm sought to recover the benefits it says were improperly paid [by State Farm] to the Defendants."); *In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practice Litig.*, 955 F. Supp. 2d 1311, 1338 (S.D. Fla. 2013) (unjust enrichment claim sustained where 'Plaintiffs' allegations that Plaintiffs directly conferred a benefit on WhiteWave by purchasing its DHA-fortified milk products at a premium price in reliance on WhiteWave's misrepresentations that the DHA in its products "supports brain health," and that WhiteWave profited from its misrepresentations and retains those profits"); *In re Auto Body Shop Antitrust Litig.,* 6:14-CV-6006-ORL-

31, 2015 WL 4887882, at *9-10 (M.D. Fla. June 3, 2015) (surveying unjust enrichment law and contrasting traditional view of claim with minority of states that treat unjust enrichment claim broadly as vehicle for restitution; "These [traditional view] states [like Florida] typically require a showing that the plaintiff 'conferred' a benefit on the defendant, and that the defendant 'appreciated' or 'knew' of the benefit and 'accepted' or 'retained it. They may also focus on whether the plaintiff reasonably expected to receive compensation for the benefit. . . . [A minority of states like California require only an allegation that] the defendant was enriched at the plaintiff's expense and the enrichment was unjust.").

The thrust of Plaintiff's allegations here has nothing to do with any exchange of goods or services, or any transfer of funds directly from one to another in any form as between Plaintiff and the children.  At least under Florida law, that is a fatal problem with the claim. And while Plaintiff's unjust enrichment claim requests that a contract between them and each of the children be implied at law, the purported construct of such an implied contract is too illusory.  Plaintiff simply alleges to have improperly deposited the Overpayment into a bank account jointly held by the Mayberg children's parents and requests that this exact amount of Overpayment now be returned by the children. Assuming, *arguendo*, that each of the children have actually received some of the Overpayment through their mother Judith, Plaintiff and the Mayberg children had no expectation of any exchange. Instead of resembling a scenario where an equitable contract should be implied at law, the case at hand is more analogous to an individual inadvertently dropping $1,000 on the street and

subsequently asking the court to infer a contract between themselves and the individual who picked up the cash to exchange the exact cash value without interest. While a plaintiff in both situations could obtain relief through other available means under the law, relief on the basis of Florida's quasi-contract doctrine of unjust enrichment simply is not possible in this context.[2]

The bottom line is that Plaintiff's Amended Complaint fails to sufficiently allege that a direct benefit was conferred to each of the Mayberg children as a result of the Overpayment. *See CFLB Partnership, LLC v. Diamond Blue International, Inc.*, 352 So. 3d 357, 360 (Fla. 3rd DCA 2022) (finding unjust enrichment claim inadequate against resort management where plaintiff allegedly loaned funds to management, who then transferred the funds to the resort owners for a heightened stake in the resort without repaying plaintiff) ("Although the undisputed facts here may . . . be viewed as evidence of inequitable circumstances warranting a finding of unjust enrichment, without evidence demonstrating that a direct benefit was conferred on [Defendant], Plaintiff's claims of unjust enrichment necessarily fail as a

---

[2]     The same, of course, could not be said of Morton's estate or the personal representative of the estate, who could be alleged to have directly received a benefit from Plaintiff and were unjustly enriched by that benefit. *See, e.g., Transamerica Life Ins. Co. v. White,* 6:23-CV-452-ACC-DCI, 2023 WL 10947171, at *9 (M.D. Fla. Dec. 27, 2023) (denying motion to dismiss unjust enrichment claim against former trustee and his successors based on overpayment of life insurance annuity to trust; "Transamerica has sufficiently alleged that, rather than return the overpayments, White (or PMSG as directed by White) used the overpayments to pay down a loan and ultimately deliver funds to a group of investors which included White.").

matter of law."). While Plaintiff's unjust enrichment claim, construed in the light most favorable to Plaintiff, may involve an *indirect* monetary benefit to the children that is not enough under Florida law. *See, e.g., Sport & Wheat, CPA, PA v. ServisFirst Bank, Inc.*, 479 F. Supp. 3d 1247, 1255 (N.D. Fla. Aug. 17, 2020) (a "Plaintiff's indirect conferral of a benefit on Defendants is insufficient to satisfy the" conferral requirement); *Wang v. Revere Cap. Mgmt., LLC,* 2023 WL 2198570, at \*8 (S.D. Fla. Feb. 15, 2023) ("Here, the First Amended Complaint does not contain any allegations indicating that Plaintiffs conferred a direct benefit on [defendants]. Rather, the First Amended Complaint alleges that Plaintiffs transferred funds to RPD and Walsh and RPD misappropriated those funds to make payments [to this defendant] on the High Yield loan. This indirect conferral of benefits is insufficient to satisfy the first element of a claim for unjust enrichment and money had and received.").

In sum, Plaintiff's assertions here fall victim to the same rationale that Judge Gayles relied on in dismissing the Plaintiff's initial complaint: Plaintiff lists all of the Mayberg children as defendants but fails to allege how any of them took any steps to directly benefit in consideration for any goods or services conferred *to them* by Plaintiff. Again, there may be other available legal remedies in a case like this, but a contract implied at law is not one of them. They may have been "unjustly" enriched in a colloquial sense, but technically the equitable remedy for unjust enrichment under Florida law requires more than that, which is entirely absent from the allegation in this count of the Amended Complaint.

Accordingly, Defendants' motion to dismiss Plaintiff's unjust enrichment claim against each of the Mayberg children should be **GRANTED**.

**B.** **_Count II—Conversion—States a Claim Against Only One Defendant_**

Florida law defines a claim for conversion as "an act of dominion wrongfully asserted over another's property inconsistent with [their] ownership therein." _Warshall v. Price_, 629 So. 2d 903, 904 (Fla. 4th DCA 1993). "[T]o state a claim for conversion, one must allege facts sufficient to show ownership of the subject property and facts that the other party wrongfully asserted dominion over that property." _Edwards v. Landsman_, 51 So. 3d 1208, 1213 (Fla. 4th DCA 2011). Conversion may occur when "a person wrongfully refuses to relinquish property to which another has the right of possession, and it may be established despite evidence that the defendant took or retained property based upon the mistaken belief that [they] had a right to possession, since malice is not an essential element of the action. _United Techs. Corp. v. Mazer_, 556 F.3d 1260, 1270 (11th Cir. 2009) (quoting _Seymour v. Adams_, 638 So. 2d 1044, 1047 (Fla. 5th DCA 1994) (internal quotation marks omitted)).

Plaintiff's principal factual allegations in support of its conversion claim against the Mayberg children are as follows:

(1) Plaintiff was not obligated to make annuity payments following Morton's death, and the Overpayment is rightfully their property based on the settlement agreement. [D.E. 26 at ¶¶ 47-50].

(2) After Plaintiff learned of Morton's death and terminated the annuity payments, Judith and the Mayberg children "refused to return the

Overpayment and remain in possession of the Overpayment." [*Id.* at
¶ 51].

(3) "Defendants instead reaped the benefit of the funds, collected their
own interest on those funds, and converted the subject funds for their
own benefit and use. Indeed, Defendants have co-mingled their
funds, assets, and properties in an effort to hide them from creditors
like [Plaintiff]." [*Id.* at ¶ 52].

### 1. *Claims Against Miriam, Aviva, Shalom, Schneur, and Joseph*

Plaintiff's allegations here are insufficient to plausibly state a claim that
Aviva, Joseph, Shalom, Miriam, or Schneur exercised dominion or control over the
Overpayment. Aside from the sweeping and largely conclusory allegations involving
the Mayberg family's co-mingling of funds, Plaintiff has not provided a single factual
allegation in any way connecting Aviva, Joseph, or Shalom to this co-mingling. In
fact, each of these three children are only mentioned in the factual portions of
Plaintiff's Amended Complaint insofar as they received Plaintiff's letters requesting
that the Overpayment be returned. While plausibly relevant to whether they had
knowledge of the Overpayment or even the settlement agreement to begin with, the
children's after-the-fact knowledge that the funds are rightfully Plaintiff's is
irrelevant to the conversion claim. Further, their receipt of Plaintiff's letters, even
construed most favorably to Plaintiff, does not plausibly support the proposition that
they received or exercised dominion over any portion of the overpaid funds which are
alleged to have been deposited into a bank account jointly held by Morton and Judith.

While Plaintiff asserts that Miriam, in 2020, purchased the house on Pine Tree Drive that her father had moved to in 2014, this additional factual allegation is insufficient to plausibly give rise to the conclusion that Miriam exercised an act of dominion or control over Plaintiff's overpaid funds. While this allegation may generally support Plaintiff's proposition that the family co-mingled its assets, Plaintiff provides no reason to believe that Miriam acquiring Morton's property on Pine Tree Drive involved Plaintiff's overpaid funds in any manner.

Plaintiff also alleges that Schneur served as co-trustee for the irrevocable trust in which Morton and Judith held their Michigan Avenue house. Plaintiff further contends that, in 2017, the property was transferred out of trust to Menachem's wife Sarita. While these allegations show a more direct role that Schneur had in handling the assets in Morton and Judith's irrevocable trust, Plaintiff has drawn no specific connection as to how Schneur's position as co-trustee or even the intra-family transfer of the Michigan Avenue property out of the trust plausibly indicates that she exercised dominion or control of Plaintiff's overpaid annuity funds.

Plaintiff's remaining factual allegations are general, often conclusory, and fail to place each of these five Mayberg children on notice of the specific misconduct they are alleged to have undertaken. The claim for conversion requires a sufficient factual showing that each of the Defendants exercised dominion or control over Plaintiff's rightful property. While Plaintiff has sufficiently alleged its rightful ownership of the Overpayment, itf ailed to provide factual allegations plausibly supporting the claim

that these five children exercised sufficient dominion or control over the funds after they were deposited into Morton and Judith's joint account.

Accordingly, Defendants' motion to dismiss Plaintiff's conversion claim should be **GRANTED without prejudice** against Aviva, Joseph, Shalom, Miriam, and Schneur. Further discovery in the case may yield additional evidence from which to assert viable conversion claims against these defendants. But, for now, a plausible conversion claim has not been sufficiently alleged against them.

### 2. *Claim Against Menachem*

Plaintiff has also introduced these additional factual allegations against Menachem and incorporated them into its conversion claim:

(1) In 2014, Morton and Judith sold their property on North Bay Road to a Florida LLC. In 2016, the property was sold to a second Florida LLC which lists Seltzer Mayberg, LLC as its registered agent. Menachem is a law partner at, and the registered agent for Seltzer Mayberg, LLC. The property on North Bay Road is currently listed for sale for over $5 million. [*Id.* at ¶¶ 26-28].

(2) Morton and Judith owned a second property on Michigan Avenue in an irrevocable trust for which Menachem and Schneur were co-trustees. In 2017, the property was transferred, through Menachem and Schneur as co-trustees, to Menachem's wife Sarita. [*Id.* at ¶ 29].

These allegations, viewed in Plaintiff's favor at this early stage, are sufficient to plausibly state a claim for conversion against Menachem. The additional element

required and satisfied here for Plaintiff's conversion claim is that the Defendants exercised an act of dominion over Plaintiff's property that deprived Plaintiff of their ownership rights. Here, Plaintiff's factual allegations against Menachem rise beyond those involving the other Mayberg children. Plaintiff has shown multiple properties previously owned by Judith and Morton that were transferred to entities associated with Menachem after Morton's death during the Overpayment period. The first property on North Bay Road was transferred to an LLC with which Menachem is affiliated as a registered agent. The second property was transferred, through Menachem as one of the co-trustees, to Menachem's wife Sarita shortly after Morton's death.

While Plaintiff has not provided explicit allegations as to how such transfers involved the overpaid funds, these factual allegations plausibly support Menachem's direct involvement with Judith's movement of substantial assets, following receipt of wrongful funds, that were ultimately transferred into his possession or control during the relevant time period.  These additional facts, missing from those involving the other defendants, puts the claim against Menachem in a different footing.  See, e.g., *Merkin v. PCA Health Plans of Fla., Inc.,* 855 So.2d 137, 140 (Fla. 3d DCA 2003) (conversion accrues where a party exercises "wrongful dominion and control over the property to the detriment of the rights of its actual owner"); *All Cargo Transp., Inc. v. Fla. E. Coast Ry. Co.,* 355 So. 2d 178, 179 (Fla. 3d DCA 1978) (money may be the subject of conversion, but "it must be shown that there was exercised a positive, overt act or acts of dominion or authority adverse to the rights of the true owner.").

Plaintiff has also pleaded that, based on the settlement agreement with Morton, Plaintiff was not obligated to issue any annuity payments after Morton's death; Plaintiff accordingly claims that the $333,000 in Overpayment after Morton's death is rightfully their property. [*Id.* at ¶¶ 47-50].   Thus, the effect of the combination of these pleaded allegations crosses the plausible line and now satisfies the conversion element requiring Plaintiff to properly allege ownership over and deprivation of the disputed property.

In a similar case in the Middle District of Florida, for instance, a conversion claim against a former trustee of a trust was sustained, together with that individual's corporate assignee.   *See Transamerica Life Ins. Co. v. White,* 6:23-CV-452-ACC-DCI, 2023 WL 10947171, at *1-3 (M.D. Fla. Dec. 27, 2023).   There a life insurance company alleged that it had issued three annuities payable to a trust based on the life an annuitant.   The annuities, like the one in our case, were life only annuities.   After the annuitant passed away, the trustee did not inform the insurer that no further payments should be made.   Almost $500,000 in overpayments were made to the trust over a four-month period.   When the trust refused to return the monies, the insurer sued the trust and a defendant White as trustee.   Those defendants (who stand in the shoes of Judith here) defaulted but no monies were collected on the judgment.

The insurer then sued White individually, together with his limited liability company, alleging that White absconded with the overpayments and funneled those monies to his LLC to pay for these defendants' individual debts.   In defense of the

conversion claim, the defendants alleged that only the trust itself exercised "dominion and control" of the annuity monies, not them.  So, only the trust could be sued on an unjust enrichment or conversion claim.  The Court disagreed, however, finding that the complaint sufficiently alleged that White individually and through his LLC took possession of the trust's assets and transferred them from the trust to third parties in payment of White's debts.  White and his LLC also refused to return the funds in their possession when demanded.  The former trustee and his successor LLC were thus individually at fault for converting the funds beyond any breach of contract claim that the insurer may have had against the trust. *Id.* at *9 ("Because the Annuities contracts had terminated, Transamerica's mistaken delivery of the overpayments, its demands for their return, and [the LLC's] refusal comprises conduct that is outside of the performance obligations under the Annuities contracts.").

Similar allegations have been made here against Menachem.  He may not have been the estate's personal representative, but he was alleged to have had sufficient direct involvement in the movement of funds with his mother that most likely included the Plaintiff's overpayment for his benefit and the benefit of his assignees.  If true, Menachem, like the defendants in *Transamerica*, exercised sufficient dominion and control over the funds so as to be individually liable for conversion for his role in the movement of the funds, whether or not he currently has them or not. *See also Perera v. Wachovia Bank, N.A.*, 09-23773-CV-JAL, 2010 WL 1375635, at *5 (S.D. Fla. Mar. 15, 2010), *report and recommendation adopted,* 09-23773-CIV, 2010 WL 1408349 (S.D. Fla. Apr. 6, 2010) (denying motion to dismiss conversion claim over

theft of funds in bank account; "the act of withdrawing the money by Defendant constitutes the exercising of wrongful dominion and control to the detriment of the Plaintiff.").

That latter point persuasively rebuts Menachem's theory that Plaintiff has not stated a claim to support a conversion claim because it has not alleged that Menachem currently retains or controls any of the disputed funds.  Not so.  For purposes of a conversion claim, that missing element does not preclude a cause of action against him.  It is well established that a conversion claim arises any time a defendant has at some point along the chain of possession asserted dominion and control over the property.  Having done so, a defendant is then liable for damages for his participation in the wrongful conversion of the property, even though that defendant may no longer be in physical possession of those funds or was not the ultimate beneficiary of the wrongful conduct.  That distinguishes the conversion claim, an against at law for damages, from other claims like equitable restitution that incorporates a current possession element.  Conversion is all about the deprivation of one's property, however long that may have been.  If an injury followed from that period of deprivation, a conversion claim follows.  *See, e.g., National Union Fire Ins. Co. of Penn. v. Carib Aviation, Inc.*, 759 F.2d 873, 878 (11th Cir. 1985) (reversing dismissal of conversion claim for defendant's unauthorized use of plaintiff's aircraft, which culminated in its destruction) ("The essence of the tort is not the acquisition of the property; rather, it is the wrongful deprivation.") (citing *Star Fruit Co. v. Eagle Lake Growers, Inc.*, 33 So. 2d 858 (Fla. 1948) (en banc)).

Accordingly, these allegations against Menachem rise above the level of labels and conclusions and place him on notice that he exercised dominion or control over at least some portion of the Overpayment during these transfers. Plaintiff also alleges that such deprivation resulted in injury to the Plaintiff for which money damages are being sought.  That is a plausible conversion claim.  Accordingly, Defendants' motion to dismiss Plaintiff's conversion claim should be **DENIED** against Menachem.

### C.    *Count III—Money Had and Received—Should be Dismissed*

"Florida law recognizes the general rule that an action for money had and received, currently treated as an action for restitution, can be maintained where money is paid under a mistake of fact or where money has been obtained through fraud, imposition, extortion or undue advantage." *Berry v. Budget Rent A Car Sys., Inc.*, 497 F. Supp. 2d 1361, 1370 (S.D. Fla. 2007) (quoting *Central Bank & Trust Co. v. General Finance Corp.*, 297 F.2d 126, 129 (5th Cir. 1961)) (internal quotation marks omitted). "The thought behind that cause of action is that, in the absence of evidence of some express specific agreement, the law will assume that one who receives and holds money that belongs to another has impliedly assumed the obligation of returning it and is, accordingly, in law indebted to the owner for it." *Williams Mgmt. Enterprises, Inc. v. Buonauro*, 489 So. 2d 160, 168 (Fla. 5th DCA 1986).

"There can be no strict rule as to what constitutes unjust enrichment, nor can an exhaustive list be given of elements which must be alleged in a pleading in order to state a cause of action for restitution. Everything depends on the circumstances of the individual case and whether or not the pleader has alleged facts which show that

an injustice would occur if money were not refunded." *Moore Handley, Inc. v. Major Realty Corp.*, 340 So. 2d 1238, 1239 (Fla. 4th DCA 1976) (citing *Cullen v. Seaboard Air Line Ry.*, 63 Fla. 122 (Fla. 1912)).

On the other hand, unlike a conversion claim, the claim for money had and received requires Plaintiff to sufficiently plead that the disputed property currently rests within the possession, custody or control of the defendant. *See Id.* at 1239 ("An action for money had and received may, in general, be maintained whenever *one has money in his hands* belonging to another, which in equity and good conscience, he ought to pay over to that other.") (quoting *Love v. Brown Development Co. of Michigan*, 100 Fla. 1373, 1381 (Fla. 1930) (emphasis added)); *see also Afridi v. Nat'l City Bank*, 509 F. Supp. 2d 655, 661 (N.D. Ohio 2007) ("[F]or restitution to lie in equity, the action generally must seek to . . . restore to the plaintiff particular funds or property *in the defendant's possession*.") (emphasis added).

Plaintiff's principal factual allegations in support of its claim for money had and received against each of the Mayberg children are as follows:

(1) The Mayberg children received the Overpayment from Plaintiff knowing that the annuity payments were contingent on Morton being alive. [D.E. 26 at ¶¶ 56-58].

(2) The Mayberg children did nothing to contact Plaintiff after Morton's death despite several letters asking them to return the Overpayment to avoid litigation. [*Id.* at ¶¶ 59-60].

23

> (3) By keeping the Overpayment despite the letters, the Mayberg
> children, "wrongfully exercised dominion and control over the funds
> comprising the Overpayment and used those funds for their own
> personal use and enjoyment, and thereby, directly benefitted from
> their receipt and retention of the Overpayment. [*Id.* at ¶ 61].

Taking these allegations in the light most favorable to Plaintiff, we do not find that Plaintiff has adequately stated a claim for money had and received against any of the Mayberg children. Plaintiff's allegations here against Aviva, Joseph, and Shalom are plainly insufficient as Plaintiff offers no evidence that any of these three children have a relationship with the funds deposited into the account jointly owned by Judith and Morton, or any family assets in general.  The claim fails right there as against them.

While Plaintiff brings more specific factual allegations relating to Miriam, Schneur, and Menachem, these allegations still do not plausibly evidence that these children currently retain any portion of the overpayment in their possession.  That proves to be fatal to this type of equitable claim. *See Afridi*, 509 F. Supp. 2d at 661 (granting defendant's motion to dismiss restitution claim where the disputed funds had since been invested and were no longer in the defendant's possession) ("[T]he restitution Plaintiff seeks cannot clearly be traced to particular funds in Defendant's possession.").

Plaintiff, for instance, alleges that Miriam purchased one of her parents' homes several years after Morton's death. Further, Plaintiff alleges that, shortly after

Morton's death, a second property previously held by Morton and Judith in an irrevocable trust was transferred to Menachem's wife, Sarita, through Schneur and Menachem as co-trustees. Finally, Plaintiff asserts that a third property previously owned by Morton and Judith was transferred to an LLC (which is not a party to this complaint) by Menachem as the registered agent after Morton's death, and that this home is currently listed for sale. While these allegations plausibly support the general co-mingling of family assets that Plaintiff alleges, and specifically sustain a conversion claim at least against Menachem, Plaintiff asserts no specific allegations regarding how any of these three children received and presently retain any portion of the Overpayment through these transfers.

As such, Plaintiff's principal assertion that each of the Mayberg children received or benefitted from the Overpayment is simply not enough. It has not alleged how any of these defendants currently or purportedly hold or retain any of Plaintiff's funds, which is a necessary component of a claim for money had and received. As with Plaintiff's unjust enrichment claim against the Mayberg children, Plaintiff lists each of the Mayberg children as defendants but does not allege how any of them ultimately received and retained the overpaid annuity funds.[3]

---

[3]     Moreover this money had and received claim is a sister claim to an unjust enrichment claim. As such, the requirement that there be a direct conferral of monies from one to another is essential to state a plausible claim. For the same reason that the unjust enrichment claim fails against these defendants, the money had and received claim suffers from the same fatal flaw. *See, e.g., Wang,* 2023 WL 2198570, at *9 (dismissing money had and received claim; "indirect conferral of benefits is insufficient to satisfy the first element of a claim for unjust enrichment and money had and received.") (citing also *City of Miami v. Eli Lilly & Co.,* No. 21-22636-CIV, 2022 WL 198028, at *9 (S.D. Fla. Jan. 21, 2022) (dismissing unjust enrichment and

Accordingly, Defendants' motion to dismiss Plaintiff's claim for money had and received should be **GRANTED without prejudice** against all the Mayberg children. Again, at this stage the dismissal should be without prejudice in the event further allegations can be asserted, if timely and based on additional discovery Plaintiff may obtain.

### D.   <u>*Count V—Aiding and Abetting Fraud—Should Also be Dismissed*</u>

Florida Law generally requires the Plaintiff to prove the following elements in a claim for aiding and abetting fraud: (1) the existence of the underlying fraud, (2) the defendant's knowledge of the fraud, and (3) the defendant provided substantial assistance to the commission of the fraud. *Logan v. Morgan Lewis & Bockius*, 350 So. 3d 404, 410 (Fla. 2d DCA 2022); *Gilison v. Flagler Bank*, 303 So. 3d 999, 1002 (Fla. 4th DCA 2020) (citing *ZP No. 54 Ltd. P'ship v. Fid. & Deposit Co. of Md.*, 917 So. 2d 368, 372 (Fla. 5th DCA 2005)). Federal Rule of Civil Procedure 9(b) requires a heightened pleading standard for fraud claims: a party alleging fraud "must state with particularity the circumstances constituting fraud." So a plaintiff alleging fraud must plead the "who, what, when, and where [of the fraud] before access to the discovery process is granted." *Infante v. Bank of Am. Corp.*, 680 F. Supp. 2d 1298, 1303 (S.D. Fla. 2009).

Plaintiff's claim here is that Judith, as Morton's wife and a joint holder of the bank account in which the annuity payments were issued, perpetrated the fraud by

---

money had and received claims where the plaintiff failed to "allege that it directly conferred a benefit on the . . . Defendants").

deliberately failing to inform them of Morton's death, which knowingly induced Plaintiff to continue issuing the life-contingent annuity payments into the joint account despite Morton's death. [D.E. 26 at ¶¶ 64-71]. The Mayberg children, Plaintiff alleges, "assisted Judith in defrauding [Plaintiff] by specifically and purposefully hiding her whereabouts." [*Id.* at ¶ 76].

Under Florida Law, a claim of fraud by omission, contrary to ordinary fraudulent misrepresentation, requires a duty to disclose the materially relevant fact at issue:

> To establish a claim of fraud by omission, a plaintiff must prove that a defendant: (i) concealed or failed to disclose a material fact; (ii) knew or should have known the material fact should be disclosed; (iii) acted in bad faith, (iv) knew the failure to disclose the material fact would induce plaintiff to act; and (v) *had a duty to disclose the material fact.* [] Notably, both the negligence and fraud by omission counterclaims *require the existence of a duty of care.*

*Alcon v. Labs., Inc. v. Allied Vision Grp., Inc.*, No. 18-CIV-61638-WILLIAMS/VALLE, 2019 LEXIS 37718, at *14-15 (S.D. Fla. Mar. 7, 2019) (emphasis added) (citing *Meridian Tr. Co. v. Batista*, No. 17-CIV-23051, 2018 WL 4760277, at *3 (S.D. Fla. Sept. 30, 2018)); *see also Friedman v. American Guardian Warranty Services, Inc.*, 837 So. 2d 1165, 1166 (Fla. 4th DCA 2003) ("Fraud based upon a failure to disclose material information exists only when a duty to make such disclosure exists.") (citing *State v. Mark Marks, P.A.*, 698 So. 2d 533, 539 (Fla. 1997)).

The first element for Aiding and Abetting Fraud requires an inquiry into whether Plaintiff has sufficiently alleged the existence of the underlying fraud in this case. Failure to allege a defendant's duty to disclose the materially relevant

information is fatal to a claim for fraud by omission. In *Alcon Labs*, for example, a defendant brought a counterclaim for fraud for the plaintiff's failure to disclose their knowledge of non-genuine contact lenses that induced the defendant to continue selling the non-genuine lenses. *Alcon Labs.*, 2019 LEXIS 37718, at *29-30. While the court was otherwise convinced that the fraud pleadings satisfied the heightened federal pleading standard, the complaint was nonetheless dismissed because it "fail[ed] to sufficiently allege a duty of care." *Id*. at *29-32.

Here, Plaintiff's Amended Complaint specifically alleges that "Judith mispresented, by purposeful omission, the material fact that Morton had died." [D.E. 26 at ¶ 65]. Plaintiff generally claims that "[i]t is incumbent upon the family or estate of a deceased payee to inform the Annuity issuer that the payee has died." [D.E. 26 at ¶ 19]. However, Plaintiff alleges no fiduciary duty under which either Judith or her children were legally obligated to inform them of Morton's death. Plaintiff's failure to allege that Judith was under a fiduciary duty to disclose Morton's death to Plaintiff as the Annuity issuer is not only fatal to their claim of fraud by omission, but also to their claims that the Mayberg children aided and abetted such fraud. A claim for aiding and abetting fraud necessarily requires the existence of the underlying fraud. And as Plaintiff's fraud by omission claim against Judith fails due to its failure to allege Judith's legal duty to disclose Morton's death, the aiding and abetting Fraud claims against the children likewise fail to sufficiently allege the existence of the underlying fraud.

All the fraud cases cited by Plaintiff, which did not require plaintiffs to allege the defendant's duty of care, involved fraud induced by a defendant's affirmative action, rather than fraud by a defendant's omission which is the theory claimed by Plaintiff in this case. *See Butler v. Yusem*, 44 So. 3d 102, 106 (Fla. 2010) (suit for fraud based on a bank officer's allegedly false or incomplete statements); Output*, Inc. v. Danka Business Systems, Inc.*, 991 So. 2d 941, 942-43 (Fla. 4th DCA 2008) (consumer suit for fraud based on a sales representative's allegedly false statements about a printing machine's capabilities); *Chang v. JP Morgan Chase Bank, N.A.*, 845 F.3d 1087, 1098 (11th Cir. 2017) (claim that a bank aided and abetted a third party's fraudulent scheme allegedly involving falsely diverting clients' funds out of deceitful escrow accounts).

Plaintiff, however, fails to point us to any binding or persuasive authority that a fraud claim is viable on these types of facts, at least without a special allegation that a duty to disclose arose in such an instance based on contractual, statutory or some other source. No allegation of any duty to disclose has been made. A fraud by omission claim, therefore, cannot be sustained under Florida law. And no fraudulent misrepresentation claim has otherwise been alleged.

Accordingly, Defendants' motion to dismiss Plaintiff's claim for aiding and abetting fraud should be **GRANTED** against all the Mayberg children.

## IV.   *CONCLUSION*

For the foregoing reasons, the Court **RECOMMENDS** that Defendants' motion to dismiss be **GRANTED in part** and **DENIED in part:**

A. Defendants' motion to dismiss Plaintiff's claim for unjust enrichment in Count I should be **GRANTED** against all of the Mayberg children**.**

B. Defendants' motion to dismiss Plaintiff's claim for conversion in Count II should be **GRANTED without prejudice** against Miriam, Aviva, Shalom, Schneur, and Joseph, and **DENIED** as to Menachem.

C. Defendants' motion to dismiss Plaintiff's claim for monies had and received in count III should be **GRANTED without prejudice** against all the Mayberg children.

D. Defendants' motion to dismiss Plaintiff's claim for aiding and abetting fraud in count V should be **GRANTED** against all of the Mayberg children.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge. Failure to timely file objections shall bar the parties from de novo determination by the District Judge of any factual or legal issue covered in the Report and shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; see, e.g., Patton v. Rowell, 2017 WL 443634 (11th Cir. Feb. 2, 2017); Cooley v. Commissioner of Social Security, 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 27th day of

April, 2024.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
Chief United States Magistrate Judge